*With the Name of Allah, the Most Gracious, the Most Merciful*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Regina M. Hunter El. | ) | |
| | ) | |
| *Petitioner(s)* | ) | C/A No. 3:24-cv-5569-MGL-SVH |
| | ) | |
| v. | ) | |
| | ) | **EMERGENCY PETITION FOR** |
| U.S. Department of Veteran Affairs | ) | **EXTRAORDINARY WRIT** |
| Uber Technologies, Inc. | ) | |
| | ) | |
| *Respondents(s)* | ) | |

**EMERGENCY PETITION FOR EXTRAORDINARY WRIT**

NOW COMES, the Petitioner to ask this Court to issue an emergency writ directing the, William Jennings Bryan Dorn Veterans Affairs Medical Center ("VA Dorn"), to pick up Elijah Hunter, ("Elijah") a 92 year old Marine veteran from New York and return him to their Emergency Room in Columbia, South Carolina.  Contrary to VA Dorn policy, Elijah was transported to Columbia Metropolitan Airport instead of his last known address in Rembert, South Carolina endangering his life and facilitating an imminent marriage to his paramour. Elijah is a vulnerable adult *exposed* to financial exploitation and emotional manipulation.

On 30 September 2024, Elijah was admitted to VA Dorn Emergency Room.  "Raven", a Social Worker screened him and he was examined by Dr. "*Mecher*" (first name correct spelling of last name unknown).  Finding no incapacitation, Elijah was discharged and an Uber ordered to drive his home.  The Social Worker received verbal confirmation from Elijah that he understood transport was to his last known residence (3065 North Kings Hwy., Rembert, SC).  Elijah understood that the VA did not provide transport to the airport.  He was told that once he reached home he would need to make his own arrangements to travel to the airport.  The Petitioner

RECD USDC COLA SC
OCT 4 '24 PM 4:30

waited up until 1:00 a.m. to see if the Uber driver pulled up with Elijah, but no car ever arrived. In addition, Raven called from the ER Department at 9:54 p.m. to confirm Elijah's home address was 3065 North Kings Hwy., Rembert, S.C. and not to 3400 Hwy. 261 North, Rembert. S.C.; where Elijah tried to stay a few days earlier in a dilapidated, uninhabitable structure without any running water or electricity.

The Petitioner received a call from the VA Dorn Medical Center ER at 4:00 a.m. in the morning, but missed the call. The Petitioner returned the call at about 5:23 a.m. in the morning and spoke with "*Nick*", the Social Worker the night shift. Nick explained that somehow Elijah got the Uber driver to take him to the airport instead of his home address. Nick also reported that a verbal altercation occurred between Elijah and the Uber driver when he refused to get back into the vehicle. Here, the Petitioner understand that the transport policy is that if a Veteran refuses transport home, the Veteran is suppose to be driven back to the hospital. That's not what occurred here. In this instance, the VA Dorn paid for Elijah's transport to the airport contrary to their policy and instructions given to their patient. Since, Uber is the VA Dorn's agent, the government is vicariously liable for their agent's actions any and all harm occurring to Elijah and due to his exploitation.

Nick recommended that the Petitioner do a wellness check on Elijah at the airport. The Petitioner contacted Columbia Metropolitan Airport security on 1 October 2024 at 5:57 a.m. and spoke with a Public Safety Officer Matt Vincent. He recalled Elijah, probably from the ruckus with the Uber driver. The Petitioner asked him to a perform wellness check on Elijah and call her back. Officer Vincent reported that Elijah had purchased a ticket to LaGuardia airport and waiting for his flight to depart. Elijah declined to call the Petitioner on his cell phone at that time.

2

The Petitioner spoke with the Social Worker Raven again on 2 October 2024 about the transport order. She confirmed she put the Uber order into the computer for Rembert. The Petitioner asked whether the hospital received an order confirmation or trip complete notice from Uber. The Petitioner spoke with the Administrative Manager on duty, Ms. Mary Monroe. She confirmed that she would reach out to the in-house Travel Department to learn if the drop off point was listed as the airport. The Petitioner has not seen the discovery, but anticipates the records will show a discrepancy between the trip destination and the actual drop off location.

**Pattern of Habitually Lying**

Thus, the Petitioner believes there are sufficient grounds for the Court to use its power to issue an extraordinary writ directing the VA Dorn to pick up the Veteran and return him to the hospital. The events show that Elijah compulsively lied on multiple occasions on 30 September 2024. Briefly, on Monday, Elijah lied to the Petitioner and her mother. Elijah asked the Petitioner and her mother to take him to the Wells Fargo ATM machine. After getting help using the machine, Elijah stated he was not going back home. The Petitioner suspected Elijah had an ulterior motive before they left home, so she contacted his DSS Social Worker, Lakevia Cooper. Ms. Cooper was unable to provide transport herself but stated if Elijah refused to return home to contact 911.

The Petitioner contacted 911 and the City of Sumter Police Department was dispatched. Officer Brooks and Officer Sargeant (first names and correct spellings unknown) responded to the Wells Fargo Bank at 1119 Broad Street, Sumter, S.C. 29150. The Petitioner explained that Elijah had an open case with DSS and ongoing litigation with his former Power of Attorney. The Officers stated since he was seated in the vehicle just to take him home. When the

Petitioner began to pull off Elijah began to get out of the moving car. The police approached him and spoke with him. He told them he wanted to go to the bus station. They told him the bus lines were finished for today. Then, he told them he wanted to go to the airport in Columbia to visit his cousin Delores in New Jersey. The officers got him to return to the vehicle and told us take him to the airport. On the way to Columbia, Eljah needed to use the bathroom. The Petitioner stopped at the lobby of the VA Dorn Medical Center for him to use their bathroom and alerted the building police of the situation (of him engaging in risk taking and aggressive behaviors, imminent marriage, *inter alia*). They escorted him to the ER and he was admitted.

Again, Elijah showed a pattern of habitual lying when he verbally confirmed to the VA Dorn Social Worker that he understood upon discharged the Uber drive would take him home. He lied to "Raven" and misled her to believe he would arrange his own transport to the airport when he arrived home. Here, the fact pattern shows that the Uber driver never drove Elijah to Rembert but took Elijah directly from the VA Dorn located at 6439 Garners Ferry Road, Columbia 29209 to Columbia Metropolitan Airport at 3250 Airport Boulevard, Columbia, SC 29170. There is no evidence at this time to support that Elijah paid his own transportation arrangements after or before the Uber driver attempted to complete the transport ticket.

Instead, he manipulated the Uber driver to take him to the airport instead. As discussed supra, once at the airport Elijah argued with the Uber driver then refused to get in the vehicle for the destination ordered by the hospital. Its' problematic that the hospital, knowing the transport instructions were altered, did not intervene to recover their patient. Furthermore, Elijah had repeatedly asked his family members to call his cousin Delores MuDuffie in New Jersey and let her know Elijah was flying to her. Instead, Elijah's true goal was to met up with his paramour Felicia Oni or Felicia Marie McLaughlin. The U.S. Department of Veterans Affairs had prior

4

knowledge since 23 May 2024 that Mrs. Oni had encouraged Elijah to commit a felony—breaking and entering, into a structure owned by Cynthia Owens, his former paramour and Power of Attorney, he neither had title to nor had the keys. At the time of that incident the Veterans Crisis Helpline assisted the Petitioner with getting local law enforcement involved to prevent Elijah's exploitation.

In addition, the Petitioner believes Elijah had intent was to harm others. The Petitioner learned from a family member that on Sunday, 29 September 2024, the day before the uproar, that Elijah had taken a squeeze bottle of bleach from the kitchen and placed it on his room shelf. In the sixteen months, Elijah had lived in the Petitioner's home he never exhibited such behavior. The VA Dorn had provided Elijah a home health care Monday to Friday from 10:00 a.m. to 1;00 p.m. In addition, his meal preparations and washing were performed by the Petitioner's mother. Thus, it is strange that Elijah would have removed the bleach bottle from the kitchen sink and placed it within arm reach in his room.

Thus, for the reasons stated above, the Petitioner asks the Court ordered the VA Dorn to recover their patient, a vulnerable elderly adult and ensure his safety. In addition, the Petitioner asks the VA Dorn consult with their District Counsel on procedures for involuntary commitment. The Petitioner believes that Elijah's mental illness is not easily discerned from the surface and that an interdisciplinary team approach may be necessary to address both Elijah's physical and mental health needs.

Respectfully submitted,

Regina M. Hunter El
3400 Hwy. 261 North
Rembert, SC 291928

## CERTIFICATE OF SERVICE

I, Regina M. Hunter El, certify that I have served the *Emergency Petition for an Extraordinary Writ* upon the U.S. Department of Veterans Affairs and Uber Technologies, Inc. by depositing a copy of it in the United States Mail, postage prepaid, on 4 October 2024 to the addresses listed below.

Respectfully,

Regina M. Hunter El
3400 Highway 261 North
Rembert, S.C. 29128

**Served Parties**

Uber Technologies Inc.
1725 Third Street
San Francisco, CA 94158

U.S. Department of Veterans Affairs
Office of the General Counsel
810 Vermont Avenue
Washington, D.C 20420
(202) 461-4900

## CERTIFICATE OF INTERESTED PERSONS

Attn:  Public Safety Department
Columbia Metropolitan Airport
2903 Aviation Way
West Columbia, SC 29170
803-822-5025 (Police)

Attn:  Airport Administrative Office
Columbia Metropolitan Airport
3250 Airport Boulevard West
Columbia, SC 29170
Tel. (803) 822-5000
Email: information@flycae.com

Ms. Lakevia Cooper, Case Worker
S.C. Department of Social Services
c/o Robin Holly Morris, County Director
105 N. Magnolia St.
Sumter, SC 29151
Email:  Lakevia.copper@dss.sc.gov

Attn: Anthony Clatone, Chief Counsel
S.C. Department of Social Services
Office of the General Counsel
P.O. Box 1520
Columbia, SC 29202-1520
Tel. (803) 898-7368
Fax: (803) 898-7245

Honorable Denis Richard McDonough,
Secretary
Office of the Secretary
U.S. Department of Veteran Affairs
810 Vermont Ave., NW
 Washington, DC 20420
Main Number: 800-698-2411

Attn:  Sean Gaffney, Chief Legal Counsel
Addus Home Care, Inc.
c/oAddus HealthCare, Inc.
6303 Cowboys Way, Suite 600
Frisco, TX 75034
Tel. (469) 535-8200
Email:  sgaffney@addus.com

Hon. Dale Atkinson, Probate Judge
Sumter County Probate Judge
215 N. Harvin Street
Sumter, S.C. 29150
Tel. (803) 436-2166
Fax : (803)-436-2407

Russell F. Roark, III, Chief
City of Sumter Police
335 N. Lafayette Street
Sumter, S.C. 29150
(803) 436-2700

Mr. Peter Warren, Suicide Prevention
Coordinator
VA Columbia South Carolina Health Care
William Jennings Bryan Dorn Veterans
Affairs Medical Center
6439 Garners Ferry Rd
Columbia, SC 29209
Phone: 803-776-4000, ext. 57034
Email: vhacmsspcmailgroup@va.gov

Mr. Belton Caughman, Director of
Psychiatry
W.J. Bryan Dorn Veterans Affairs Medical
Center
Department of Psychiatry, Bldg. 106
6439 Garners Ferry Rd
Columbia, SC 29209
Tel. No. (803) 776-4000